David A. Garcia CA Bar No. 218356
david.garcia@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone: 714-800-7900
Facsimile: 714-754-1298

Attorneys for Defendants
RTX CORPORATION, RAYTHEON COMPANY and
PATRICIA HOUSE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

CHRISTIAN LE MAI, an individual,

Plaintiff,

v.

RTX CORPORATION, a Delaware corporation, doing business as RAYTHEON COMPANY and formerly known as RAYTHEON TECHNOLOGIES CORP.; and PATRICIA HOUSE, an individual,

Defendants.

Case No. 2:26-cv-05881 JAK (AYPx)

**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT; OR, IN THE ALTERNATIVE, LEAVE TO AMEND AND FILE FIRST AMENDED COMPLAINT (DKTS. 18, 24); RESPONSE TO SUPPLEMENTAL DECLARATION OF CHRISTIAN LE MAI (DKT. 20-2)**

[Filed pursuant to the Court's Order granting leave, Dkt. 23]

DATE: November 2, 2026
TIME: 8:30 a.m.
DEPT.: Courtroom 10C

Complaint Filed: April 26, 2026
Trial Date: None Set
District Judge: Hon. John A. Kronstadt
Magistrate Judge: Hon. Anna Y. Park

# I. <u>**INTRODUCTION**</u>

Plaintiff's Reply concedes the central points of Defendants' opposition to the Motion. Plaintiff filed his Motion on the premise that Sarah Beck ["Beck"] could be sued individually for retaliation under Labor Code section 1102.5(b) as a "person acting on behalf of the employer."

Plaintiff's proposed FAC is a chronologically untenable and contradictory theory: that Beck, a Senior Manager in RTX's Human Resources function, is individually liable for "harassment" under Government Code section 12940(j). That theory fails over and over. First, the Supplemental Mai Declaration ("Supp. Mai Decl.") contradictorily recasts Beck as a "hands-on supervisor" who *at all times* "<u>**throughout**</u>" 2024 directed Plaintiff's work conditions, contradicting Plaintiff's own pleading and the declaration itself. (Supp. Mai Decl. ¶ 6.) <u>By Plaintiff's sworn account, Beck was not introduced until September 3, 2024</u>. (*Id.*¸ *compare* ¶ 6 to ¶ 11.) By then, House had already issued the Disciplinary Action Form ("DAF") and the PIP. By then, Plaintiff's prior counsel had already protested both in an August 7, 2024 letter that named only House. (See the "August 7, 2024 Letter," Exhs. A and B to the redlined FAC, Dkt. 24-2.) Second, every act attributed to Beck in the proposed FAC is a quintessential personnel management function: participating in Performance Improvement Plan ("PIP") review meetings, enforcing reporting requirements House had already imposed, communicating a termination decision, declining to provide an internal appeal, and declining to give a represented employee the direct telephone number of the company's lawyer. It is settled, for example, in *Reno v. Baird*, 18 Cal. 4th 640 (1998) and *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158 (2008), that conduct that arises out of the performance of necessary personnel management duties, cannot ground individual liability.

Plaintiff in his Reply concedes other issues with his proposed FAC: in the final paragraph of his Reply, Plaintiff also asks for leave to amend yet again "to cure the issue of exhaustion as to his FEHA claim" against Beck, admitting another defect.

Plaintiff never obtained the Civil Rights Department's ("CRD") right-to-sue notice as to Beck, as required by Cal. Gov't Code § 12960 and *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994). This defect is grounds for judgment on the pleading.

Because Plaintiff cannot state any claim against Beck under settled California law, her joinder is improper and her California citizenship must be disregarded. Complete diversity between Plaintiff (California), RTX and Raytheon (Delaware and Virginia), and House (Arizona) remains intact. The Motion should be denied.

## II. RELEVANT BACKGROUND

Plaintiff's original complaint did not name Beck. (Dkt. 19 at 8.) Plaintiff later moved to add Beck while dropping every federal claim, arguing that Beck's California citizenship "will require remand." (Proposed First Amended Complaint ("FAC") ¶ 7 (Dkt. 18-1, Ex. A; *see also* Dkts. 24-2, 24-3).)

But Plaintiff's pleading gamesmanship exposes Plaintiff's moves as manufactured jurisdiction. The FAC alleges that House "**unilaterally**" issued the DAF and then the PIP. (*Id.* ¶ 71 [emphases added].) It alleges that the PIP imposed the 15-minute reporting requirement, weekly status and forecast updates, and weekly performance reviews. (*Id.* ¶ 40.) The redlined FAC *moves* the PIP date from "May 26" to "July 22, 2024." (Dkt. 24-2 ¶ 40.) Beck is alleged to have "assumed HR responsibility for this ongoing employment action" only in or about August 2024, after another HR manager went on maternity leave. (FAC ¶¶ 41–42.) The conduct the FAC attributes to Beck consists of four things: participating in PIP review meetings; declining to give Plaintiff in-house counsel's telephone number; communicating the October 22, 2024 termination and declining an appeal; and answering "many people" when asked who made the decision. (*Id.* ¶¶ 43–45, 49, 76, 103.)

Plaintiff's counsel wrote to RTX Human Resources on August 7, 2024. (Dkt. 24-2, Ex. B (the "August 7 Letter").) The letter is captioned "**Concern**: Patricia House." [Emphasis added.] It asks HR to review "Ms. Patricia House's management

decisions," and it states that "[t]here is no pending claim or complaint at this time." (*Id.*) The letter attributes the DAF, the PIP, and the 15-minute reporting requirement to House. Every remedy it requests is directed at House. It invites HR to "contact our office." (*Id.*) It does not mention Beck.

Plaintiff filed only one CRD complaint, on April 14, 2026. The CRD issued an immediate right-to-sue notice the same day. (Dkt. 24-2, Ex. A.) The complaint names "Raytheon Technologies" as the sole respondent and attached the August 7 Letter as an exhibit. (*Id.*) Beck appears nowhere in the August 7 Letter.

## III. LEGAL STANDARD

When a plaintiff seeks post-removal joinder of a non-diverse defendant, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). A non-diverse defendant's citizenship is disregarded if "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citations omitted). The Court may consider summary-judgment-type evidence, including the parties' declarations. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *GranCare, LLC v. Thrower*, 889 F.3d 543, 550 (9th Cir. 2018).

## IV. THE FACT MENTIONS ONLY NECESSARY PERSONNEL DUTIES

### A. *Reno and Jones* Distinguish Non-Actionable Personnel Management From Individually Actionable Harassment.

FEHA draws a categorical line. On one side is harassment, for which an individual employee may be personally liable. Cal. Gov't Code § 12940(j)(3). On the other side are discrimination and retaliation, for which only the employer is liable. *Reno*, 18 Cal. 4th at 645–47; *Jones*, 42 Cal. 4th at 1160, 1173. FEHA treats discrimination and retaliation differently because harassment is a type of conduct not necessary to a supervisor's job performance while discrimination claims arise out of the performance of necessary personnel management duties. *Jones*, 42 Cal. 4th at 1164.

California courts have long applied the distinction to FEHA harassment claims. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63–65 (1996). The Supreme Court adopted *Janken's* framework in *Reno*. 18 Cal. 4th at 645–47.

Under that framework, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Janken*, 46 Cal. App. 4th at 63–65.

In *Francis v. City of Los Angeles*, 81 Cal. App. 5th 532, 541 (2022), the court held that "[M]inor or relatively trivial adverse actions . . . that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee do not materially affect the terms or conditions of employment." For example, a counseling record criticizing the employee's work practices, whether the acts were considered individually or together, are not actionable harassment. *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 392 (2006).

Overall, the statute does not support harassment claims against individuals based on necessary personnel management actions.

### B. Each Act Attributed to Beck Is a Personnel Management Function

Measured against these standards, the FAC describes a Human Resources professional doing her job. The FAC alleges that, after August or September 2024, after "Beck **assumed** HR Responsibility," Beck "regularly reviewed, supervised, controlled, and ultimately terminated Plaintiff's employment." It also alleges that she participated in "weekly Zoom meetings . . . to discuss Mai's continued employment, ongoing work performance, as well as improvements (or supposed lack thereof) to such performance." (FAC ¶¶ 42–43.) The harassment count lists acts by Beck that fall within the personnel management category:

**Refusing to provide counsel's telephone number.** Declining to hand an

employee the direct line of in-house counsel is a routine administrative response. At the time, Plaintiff already had his own counsel, who had invited HR to "contact our office." (Dkt. 24-2, Ex. B.) That refusal altered no condition or privilege of employment.

**Refusing an appeal.** Deciding whether a separation decision is subject to internal appeal is the administration of company policy. It is part of "hiring and firing" and "the like." *Janken*, 46 Cal. App. 4th at 64–65. Plaintiff's disagreement is a dispute about management policy.

**Not disclosing the decision-makers.** Answering "many people" when asked who decided the termination (FAC ¶ 45) is a description of how corporate decisions are made. *Reno* recognizes that "corporate decisions are often made by multiple individuals." Declining to elaborate is not conduct "outside the scope of necessary job performance." *Janken*, 46 Cal. App. 4th at 63.

**Alleged "pretext."** The allegation that Beck used "employer disciplinary actions as pretext to terminating" Plaintiff (FAC ¶ 103) challenges the motive behind a personnel decision. That is the definition of a discrimination or retaliation theory, which *Reno* and *Jones* hold cannot be asserted against an individual.

**Alleged "collusion."** The allegation that Beck "collud[ed] with other members of RTX management to purposefully target Plaintiff for termination" (FAC ¶ 103) is the same challenge to the termination decision, *relabeled*. It is pleaded identically against House. (*Id.* ¶ 102.)

Plaintiff's Reply proves the point. It describes Beck's role as "active direction and participation in the totally contrived PIP meetings, purposeful performance reviews, blunt and final termination of Plaintiff . . . as well as her abject refusal of any means to appeal." (Dkt. 20 at 6.) PIP meetings, performance reviews, termination, and appeal decisions are textbook examples of conduct that arises out of the performance of necessary personnel management duties. Adjectives such as "*contrived*," "*blunt*," and "*abject*" do not change the character of the acts.

**C. <u>The Supplemental Declaration Contradicts Plaintiff's Own Record</u>**

The Supplemental Declaration was prepared "to directly respond to" Defendants' Opposition. (Supp. Mai Decl. ¶ 5.) Plaintiff executed it on October 6, 2026, nearly *two years* after the events. It came after Plaintiff had already pleaded that Beck's citizenship "will require remand." (*Id.* at 9; FAC ¶ 7.) It does not cure the FAC's deficiencies. In contradicts the FAC, Plaintiff's own exhibits, and itself.

**Beck arrived after the DAF and PIP were issued.** The declaration asserts that Beck "at all times" "throughout my employment crisis in 2024" "relentlessly and personally directed, monitored, and implemented" Plaintiff's work conditions. (Supp. Mai Decl. ¶ 6.) Yet the same declaration says House introduced Beck as the responsible HR representative on **<u>September 3, 2024</u>**. (*Id.* ¶ 11.) The FAC places Beck's arrival "on or about August 2024." (FAC ¶ 42.) Either way, House had already issued the DAF and the PIP. Plaintiff's counsel had already protested both in the August 7 Letter. Beck could not have participated in the DAF or the PIP.

**The 15-minute reporting requirement was House's, not Beck's.** The declaration calls the 15-minute tracking Beck's "new arbitrary policy." It describes Plaintiff's daily status reports as "mandated by Ms. Beck." (Supp. Mai Decl. ¶¶ 13–14.) Yet, the FAC alleges that House's PIP "required Plaintiff to report in 15-minute increments." (FAC ¶ 40.) The August 7 Letter attributes the same requirement to House's PIP "on or about May 26, 2024." It describes these as "reporting requirements imposed by Ms. House." (Dkt. 24-2, Ex. B.) The declaration describes the rule as "newly implemented" in mid-September 2024. (Supp. Mai Decl. ¶ 17.) Plaintiff's own counsel had protested that rule a month earlier. A Human Resources partner who reviews time records for compliance with an existing PIP is performing "performance evaluations." *Janken*, 46 Cal. App. 4th at 64–65.

**The counsel-contact account shifts.** The FAC alleges that Plaintiff "called Beck via Microsoft Teams" to ask for RTX's lawyer's number. (FAC ¶ 44.) The declaration now places the exchange in the September 3, 2024 PIP video meeting with "all

attendees" on camera. (Supp. Mai Decl. ¶ 12.) Plaintiff speculates that the refusal was meant to keep him "isolated and completely defenseless." (*Id.*) That speculation is irreconcilable with the record. Plaintiff was already represented. His counsel had already opened a line of communication with HR, inviting HR to "contact our office." (Dkt. 24-2, Ex. B.) There is no rationale to credit Plaintiff's deductions of this kind.

**The "baby-sitted" remarks were Biederman's words.** The harshest quoted words in the declaration belong to Rachael Biederman, who is not a party. The declaration quotes her as saying that "with 27 years of work [at Raytheon], you don't know all this!" and that Plaintiff "shouldn't need to be baby-sitted." (Supp. Mai Decl. ¶ 17.) The declaration attributes to Beck only that she "sat on the video conference ***seemingly*** smirking." [Emphases added.] It also says she "joined in" with unquoted "descriptions of [Plaintiff's] supposed lack of knowledge" of his job duties. (*Id.*) An impression that someone was "seemingly smirking" during another manager's feedback is not conduct by Beck, much less harassment. Criticism of job performance during a PIP review is a "performance evaluation[ ]." *Janken*, 46 Cal. App. 4th at 64–65.

**The declaration's termination account conflicts with the FAC.** Plaintiff calls House his "line manager" and calls Biederman House's managerial supervisor. (Supp. Mai Decl. ¶¶ 11, 17.) He nonetheless asserts that House "apparently took direct cues and instructions from Ms. Beck." (*Id.* ¶ 15.) That assertion contradicts the FAC, which alleges that House "**unilaterally**" issued the DAF and PIP before Beck replaced the prior HR representative. (FAC ¶ 71.) The declaration says Plaintiff "was advised that [he] was terminated" at a meeting attended by Beck, House, and Biederman. (Supp. Mai Decl. ¶ 21.) Both accounts say Beck told him that "many people" made the decision. (*Id.* ¶ 22; FAC ¶ ¶ 45, 76.) Communicating a termination decision made by "*many*" others is quintessential personnel management.

**The jury-duty theory does not involve Beck.** Plaintiff notified House, not Beck, of his jury service. (Supp. Mai Decl. ¶ 9 and ¶ 20.) The FAC alleges that House, not

Beck, texted and emailed him during that service. (FAC ¶ 75.)

**Plaintiff's new motive theory rests on recent review of a LinkedIn profile in 2026.** Plaintiff's theory that Beck "design[ed]" the timing of his termination using "Retention Programs" and "Compensation Planning" comes from his "recent[ly]" review of her public LinkedIn profile. (Supp. Mai Decl. ¶¶ 7–9.) He hedges that theory as what "appeared to [him]" and what he "perceived." (*Id.* ¶ 9.) Speculation about the motive behind a termination is a discrimination theory unavailable against an individual.

**The sworn account goes beyond the pleading Plaintiff asks leave to file.** The September 9, 2024 time-card exchange, the September 16, 2024 meeting with Biederman, and the anonymous ethics complaint appear only in the October 6 declaration. (Supp. Mai Decl. ¶¶ 13–17, 19.) They do not appear in the redlined and unmarked FAC that Plaintiff re-filed on October 15, 2026. (Dkts. 24-2, 24-3.) Plaintiff's proposed FAC remains confined to the counsel-number and termination-appeal exchanges and the conclusory "pretext" and "collusion" allegations.

Plaintiff relies on *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009). (Dkt. 20 at 6, 8.) In *Roby*, however, the plaintiff proved a pattern of demeaning comments and conduct by her supervisor, including disparaging remarks about the plaintiff's body odor and about arm sores linked to her disability. 47 Cal. 4th at 706–09. *Roby* did not hold that personnel decisions standing alone constitute harassment. Nor did it displace the *Reno/Janken* distinction . Plaintiff's reliance on *Martinez v. Michaels Stores, Inc.*, No. CV 15-02104 MMM (Ex) (C.D. Cal. July 15, 2015), is likewise misplaced. As Plaintiff describes it, *Martinez* involved a supervisor's alleged participation in or condoning of "pervasive race-and national-origin-based abuse." (Dkt. 20 at 7.)

Here, Beck is not alleged to have engaged in independent harassing conduct from which an offensive "message" could be inferred.

## V. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Before suing under FEHA, an employee must file a timely administrative

complaint with the CRD and obtain a right-to-sue notice. Cal. Gov't Code §§ 12960, 12965. Exhaustion is "a jurisdictional prerequisite to resort to the courts." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996). The requirement applies defendant by defendant: a plaintiff must exhaust as to each individual he later names in a civil action. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994). Beck is not named as a respondent and is not mentioned in the body of the complaint. It cannot support remand.

If a plaintiff can defeat the purpose of the statute merely by filing a placeholder pleading with some stated future intention, "[i]f [that] procedure were acceptable, it would make the exhaustion requirement meaningless and defeat its purpose, which is to promote settlement or resolve minor disputes with minimal expense." *Le Mere v. L.A. Unified Sch. Dist.*, 35 Cal. App. 5th 237, 246–47 (2019). Plaintiff proposes exactly that sequence. But this late effort means that "the objective of resolving meritorious claims without the cost of litigation would be entirely frustrated." *(Bjorndal v. Superior Court (2012), 211 Cal.App.4th 1100, 1113.* The exhaustion defect as to Beck therefore cannot be cured in this action.

## VI. FEDERAL DIVERSITY JURISDICTION EXISTS HERE

Plaintiff's original lead theory against Beck was section 1102.5(b), an improbable theory against an individual. (Dkt. 18 at 6, 16–17.) *See e.g.*, *Kun Ma v. Pall Corp.*, No. CV 10-4324-JFW (JCGx), 2010 WL 11601192, at *3 (C.D. Cal. Sept. 7, 2010). (A state Court of Appeal recently also held that "an individual manager or supervisor cannot generally be sued under 1102.5(b)." (see Dkt. 20 at 8; citing *Chaudhry v. State of California*, No. A173501, slip op. at 22–35 [Cal. Ct. App. Sept. 28, 2026]).

Plaintiff's remaining Labor Code claims against Beck under sections 98.6(a) and 6310(a) cannot stand because Plaintiff pleads them on the identical nonactionable allegations, based on a "person acting on behalf of the employer" theory. (FAC ¶ 48.) *Jones's* concerns apply with equal force across employment retaliation statutes. Individual supervisors are not proper defendants on a claim for wrongful termination

in violation of public policy. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 900 (2008).

Beck is improperly joined, and her California citizenship must be disregarded. Without her, complete diversity exists. The amount in controversy far exceeds $75,000. Plaintiff's Reply argues only that the Complaint contains no express dollar allegation (Dkt. 20 at 3), which is not the test. This Court retains jurisdiction under 28 U.S.C. § 1332.

The same conclusion follows under section 1447(e). The claims against Beck are invalid. Complete relief remains available against RTX for any act Beck took within the scope of her employment. (Dkt. 19 at 11–16).

## VII. FURTHER LEAVE TO AMEND WOULD BE FUTILE

As a last resort, Plaintiff asks for leave to further amend the FAC. (Dkt. 20 at 10.) The burden of demonstrating a reasonable possibility of cure is squarely on the plaintiff. Plaintiff has now pleaded his theory against Beck in the proposed FAC, in its redlined and unmarked re-filings, and in a 24-paragraph sworn declaration. The additional "granular" facts (Dkt. 20 at 9) describe the same PIP meetings, the same reporting requirements House imposed *before* Beck arrived, and the same termination exchange. All of it is personnel management. No amendment can change the fact that Beck was not named in Plaintiff's CRD complaint before suit. Post-suit exhaustion does not cure that defect. Amendment would be futile.

Defendants respectfully request that the Court deny Plaintiff's Motion.

DATED: October 21, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ David A. Garcia*
David A. Garcia
Attorneys for Defendants
RTX CORPORATION, RAYTHEON COMPANY and PATRICIA HOUSE

**PROOF OF SERVICE**
*Christian Le Mai v. RTX Corporation, et al.*
Case No. 2:26-cv-05881 JAK (AYPx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On October 21, 2026, I served the following document(s):

**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT; OR, IN THE ALTERNATIVE, LEAVE TO AMEND AND FILE FIRST AMENDED COMPLAINT (DKTS. 18, 24); RESPONSE TO SUPPLEMENTAL DECLARATION OF CHRISTIAN LE MAI (DKT. 20-2)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☐ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:

☐ [Federal Court] the written confirmation of counsel in this action and order of the court:

☒ **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐ **(Federal)** I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 21, 2026, at San Diego, California.

Pamela Blanton

**SERVICE LIST**

| | |
|---|---|
| Christopher T. Aumais, Esq.<br>Ryan Gustafson, Esq.<br>GOOD GUSTAFSON AUMAIS LLP<br>2330 Westwood Boulevard, Suite 103<br>Los Angeles, California 90064<br>Phone: 310-274-4663<br>Fax: 310-846-8938<br>cta@ggallp.com<br>jrg@ggallp.com<br>service@ggallp.com | Attorneys for Plaintiff<br>Christian Le Mai |
| Gregory J. Morrow, Esq.<br>MORROW LAW GROUP INC<br>1801 Century Park East, Suite 2400<br>Los Angeles, California 90067<br>Phone: 310-894-9149<br>gregory.j.morrow@hotmail.com | Attorneys for Plaintiff<br>Christian Le Mai |